*28
MEMORANDUM ORDER

The Defendant, Jon Nathaniel Crowe, was convicted by a jury on June 27, 2008 and sentenced by the Court in case # CR07-1373 to a term of incarceration of twelve months, followed by a consecutive sentence of incarceration in case # CR07-1375 of twelve months, followed by a third consecutive sentence of incarceration in case # CR07-1376 of twelve months. Defendant was credited 6 months towards judgment for case # CR07-1373 for time *29 already served. Mr. Crowe has now filed a Motion for Appropriate Relief pursuant to Cher. R.Crim. P. 20(d), asserting that the consecutive sentences imposed by the Court violated 25 U.S.C. § 1302(a)(7) of the Indian Civil Rights Act (hereafter the ICRA) and that he is entitled to discharge from custody.
The Motion came on before the Court for hearing on May 26, 2010. Mr. Crowe was represented by Robert Saunooke, Esquire and, through counsel, waived his right to be present for this hearing, which the Court allowed. The Tribe was represented by Roy Wijewickrama, Esquire, the Tribal Prosecutor. Inasmuch as the original jury trial was presided over by Judge Martin, and the Motion was set before Judge Saunooke, the Court agreed to hear the case en bane. The Court has reviewed the file and heard the argument of counsel. The issue presented is purely a legal one and no testimony was adduced. Nevertheless, the Court, taking judicial notice of its own records, makes the following:
FINDINGS OF FACT
1. The Defendant, Jon Nathaniel Crowe, is an enrolled member of the Eastern Band of Cherokee Indians.
2. On January 16, 2003, Defendant, Jon Nathaniel Crowe, was charged with Domestic Violence (hereafter DV) assault in the 1st degree in case number CR-03-98.
3. On May 2, 2003, the Defendant, Jon Nathaniel Crowe, was convicted of DV assault in the 1st degree in case number CR-03-98.
4. On August 26, 2003, the Defendant, Jon Nathaniel Crowe, was charged with DV communicating threats in case number CR-03-1360.
5. On September 20, 2004, the Defendant, Jon Nathaniel Crowe, was convicted of DV communicating threats in case number CR-03-1360.
6. On August 5, 2005, the Defendant, Jon Nathaniel Crowe, was charged with DV assault on a female in case number CR-05-1010.
7. On September 2, 2005, the Defendant, Jon Nathaniel Crowe, was convicted of DV assault on a female in case number CR-05-1010.
8. On September 28, 2007, the Defendant, Jon Nathaniel Crowe, was charged with DV assault on a female in case number CR07-1373.
9. On September 28, 2007, the Defendant, Jon Nathaniel Crowe, was charged with habitual assault in case number CR07-1374.
10. On September 28, 2007, the Defendant, Jon Nathaniel Crowe, was charged with simple possession of marijuana less than one-half ounce in case number CR07-1377.
11. On September 28, 2007, the Defendant, Jon Nathaniel Crowe, was charged with possession of drug paraphernalia in case number CR07-1378.
12. On September 28, 2007, the Defendant, Jon Nathaniel Crowe, was charged with DV false imprisonment in case number CR07-1375.
13. On September 28, 2007, the Defendant, Jon Nathaniel Crowe, was charged with resisting lawful arrest in case number CR07-1376.
14. On June 27, 2008, the Defendant, Jon Nathaniel Crowe, was convicted by a jury of DV assault on a female in case number CR07-1373.
15. On June 27, 2008, the Defendant, Jon Nathaniel Crowe, was convicted by a jury of DV false imprisonment in case number CR07-1375.
*30 16. On June 27, 2008, the Defendant, Jon Nathaniel Crowe, was convicted by a jury of resisting lawful arrest in case number CR07-1376.
17. At trial, testimony was adduced to show that at the time and place alleged, the Defendant viciously beat Vickie Parker, held her down and prevented her from fleeing the premises where the beating occurred and then resisted arrest upon the arrival of law enforcement personnel. Additional testimony demonstrated that the Defendant attempted to coerce control over Ms. Parker by violence.
18. Additional testimony indicated that the Defendant may have coerced Ms. George into withdrawing her incriminating statement and substituting a false statement before the United States Magistrate Judge in a federal prosecution stemming from the same incident in order to obtain a more favorable plea bargain arrangement, possibly in violation of 18 U.S.C. § 1512(a)(2) and (c).
19. Finally, other testimony demonstrated that, on a prior occasion, Mr. Crowe dug a grave in the woods and forced Ms. Parker to view it, while he made statements that it was for her and that he once poured kerosene down Ms. Parker’s throat and threatened to set her afire.
20. The Chief Justice of this Court, William Boyum is a Phi Beta Kappa graduate of the University of North Carolina at Chapel Hill and has a J.D. from the UNC School of Law. Chief Justice Boyum is a former Assistant United States Attorney and State Court prosecutor.
21. The founding Chief Justice of this Court, Harry C. Martin holds an undergraduate degree from the University of North Carolina at Chapel Hill, a law degree from Harvard Law School, and an L.L.M. from the University of Virginia School of Law. Chief Justice Martin, who continues to serve this Court as a Temporary Justice, is a retired member of the Supreme Court of North Carolina, and is the retired Chief Circuit Mediator for the United States Court of Appeals for the Fourth Circuit. Chief Justice Martin has received numerous national awards in hon- or of his lengthy legal career including: The American Bar Association’s Franklin Flaschner Award, the North Carolina Bar Association’s John J. Parker and Liberty Bell Awards and the University of North Carolina’s Distinguished Alumni Award.
22. Associate Justice Brenda Toineeta Pipestem is a graduate of Duke University and has a J.D. from Columbia University. Justice Pipestem has worked both in the Bureau of Indian Affairs as well as the Justice Department. In addition to serving this Indian Nation, she sits as a member of the highest Courts of two other Indian Tribes.
23. Judge Kirk G. Saunooke has sat on this Court since its inception. Prior to the creation of this Court in the year 2000, he served for several years as a jurist for the Court of Indian Offenses, which this Court succeeded. Judge Saunooke is a graduate of Western Carolina University and has a J.D. from the UNC School of Law.
24. Judge J. Matthew Martin holds a B.A. with Honors in History from the University of North Carolina at Chapel Hill, and is a graduate of the UNC School of Law. Judge Martin also has a Master’s Degree in Judicial Studies from the University of Nevada. Judge Martin is Board Certified by the North Carolina State Bar as a Specialist in Federal and State Criminal Law and Criminal Appellate Practice by the North Carolina State Bar. In the 1991 Term of the Supreme Court of the United States, he argued Wade v. United States, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) for the Petitioner.
*31 25. Judge Steven E. Philo is a graduate of the United States Military Academy and served in Vietnam. Judge Philo is a graduate of the Wake Forest School of Law. Judge Philo is recognized across the State of North Carolina for his dedication to improving the lives of lawyers who struggle with the disease of addiction. Judge Philo presides over the Eastern Band of Cherokee Indians’ Drug Court.
26. All of the Judges of the Judicial Branch of Tribal Government are Bar licensed attorneys, as are all members of the Tribal Bar.
DISCUSSION
The ICRA states that an Indian tribe may not “impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of one year.” U.S.C § 1302(a)(7).[1] Although the Defendant did not argue this, it is worth noting that the protections of the ICRA have been adopted by the Tribal Council and are the law of this jurisdiction, independent of the Act of Congress. C.C. § 15-7.
Defendant argues that “any one offense” is an ambiguous term that has been interpreted by some courts as meaning any criminal acts arising from a single criminal transaction. Under this interpretation, any criminal acts arising from a “common nucleus of facts” would be within a single criminal transaction.
Defendant claims that his criminal acts arose under a single criminal transaction, thus the ICRA prevents this Court from imposing a sentence in excess of one year incarceration, no matter how many crimes were committed within the so called single criminal transaction. The Eastern Band of Cherokee Indians (hereafter the Tribe) contends that this is not the correct interpretation of the term “any one offense.” The Tribe argues that the term “any one offense” is interpreted as any discrete violation of the criminal law. This interpretation allows for consecutive sentences of incarceration to exceed one year so long as the judgment for each individual offense is not in excess of one year.
The rules of statutory construction “require [a court] to presume that the legislature says in a statute what it means and means in a statute what it says there.” BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004). When using statutory construction, the analysis “begins with the statutory text, and ends there as well if it is unambiguous.” Id. When specific terms are used in a statute they must be read using their “ordinary meaning ... at the time Congress enacted [the law].” Id. Moreover, when Congress adopts or uses a term, the Court “must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of th[at] ter[m].” NLRB v. Town and Country Elec., Inc., 516 U.S. 85, 94, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995). Therefore, the meaning of the phrase “any one offense” at the time the ICRA was adopted by Congress must be accepted and applied by the Court.
The Supreme Court of the United States has continually taken the position that the term “offense” is a reference to a discrete criminal violation. In Ebeling v. Morgan, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915), the defendant, during a “single criminal transaction,” cut and tore multiple mail bags. Even though the mail bags were cut or tom during a single *32 transaction, the Supreme Court held that “successive cutting into the different bags constitute^] different offenses” so a complete and distinct offense was committed every time an individual bag was cut or torn. Id. at 628, 35 S.Ct. 710.
Furthermore, in American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946), the Supreme Court affirmed that a single act can be an offense against two different statutes. This reasoning allowed offenses to be distinct in law, no matter how factually related. Because the term “offense” at the time of the ICRA’s adoption had a common and accepted meaning, and because there was no special definition for the term included in the ICRA, “any one offense” is not an ambiguous term and the ordinary and accepting meaning must be adopted and applied by the Court according the rules of statutory construction. Therefore, since the common and accepted meaning of “offense” at the time of the enactment of the ICRA was “any distinct violation of a criminal statute,” the Court has the authority to impose a one-year maximum term of imprisonment for each distinct violation of a criminal statute in this jurisdiction.
Defendant’s arguments rely heavily on Spears v. Red Lake Band of Chippewa Indians, 363 F.Supp.2d 1176, 1178, 1181 (D.Minn.2005), a case in which the United States District Court for the District of Minnesota found the term “any one offense” to be ambiguous and interpreted the term to mean that “separate violations form a ‘single criminal transaction’ when they are factually or legally intertwined.” Under this interpretation, a tribal court does not have the authority to impose a sentence of incarceration greater than one year if all criminal acts arise under a single criminal transaction, ie. criminal acts that spring from a nucleus of common facts.
Defendant also cites the United States District Court for the District of Arizona’s decision in Miranda v. Nielson, 2009 U.S. Dist. Lexis 122933 and Bustamante v. Valenzuela, 2010 WL 1337131, 2010 U.S. Dist. LEXIS 32238 (D.Ariz., Feb. 3, 2010), a Magistrate Judge’s Report and Recommendation filed in the United States District Court for the District of Arizona. However, The Report and Recommendation filed by the Magistrate Judge was not followed by the District Court and thus was effectively overruled by Bustamante v. Valenzuela, 715 F.Supp.2d 960, 2010 U.S. Dist. LEXIS 32236 (D.Ariz., Apr. 1, 2010). The Defendant’s reliance on the Magistrate’s Report and Recommendation is misplaced as Bustamante supports the Tribe’s position. On the other hand, Miranda is grounded exclusively upon Spears and a discussion of Spears negates the need to analyze Miranda specifically.
In Spears the court found that “any one offense” is an ambiguous term contained within both the Fifth and Sixth Amendment of the United States Constitution. The Spears court suggested that the Fifth Amendment’s prohibition on multiple prosecutions “for the same offense” is ambiguous and could be interpreted as either preventing consecutive prosecutions for offenses arising out of the “same evidence,” or offenses arising out of the “same transaction.” U.S. Const. Amend. V.; Spears at 1178. Since the term “for the same offense” in the Fifth Amendment is ambiguous, the Spears court concluded the term “any one offense” used in the ICRA is equally ambiguous and subject to multiple interpretations.
Similarly, the Spears court found that an ambiguity within the context of the Sixth Amendment right to a jury trial mirrored the ambiguousness of the term “any one *33 offense” in the present context. The right to a jury trial does not extend to “petty offenses” (an offense carrying a maximum prison term of 6 months or less) so it is possible that a person convicted of multiple “petty offenses” may be subject to a lengthy prison sentence without having the right to a jury trial. In Codispoti v. Pennsylvania, 418 U.S. 606, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), the Supreme Court of the United States held that several petty offenses were in effect a single, “serious offense.” Therefore, at certain times under the Sixth Amendment, multiple offenses have been interpreted as only one “serious offense,” ie. a single criminal transaction. Thus only one sentence was available per that one transaction. The Spears court suggests that this same issue exists in the ICRA’s use of the term “any one offense.”
This Court rejects the findings in Spears and agrees with the U.S. District Court of Arizona’s recent decision in Bustamante v. Valenzuela, 715 F.Supp.2d 960, 2010 WL 1338125, 2010 U.S. Dist. LEXIS 32236 (D.Ariz., Apr. 1, 2010). In Bustamante, the District Court rejected the “single criminal transaction” theory. The Busta-mante court held that “any one offense” is any distinct violation of a criminal statute and that “Indian tribes may impose a one-year term of imprisonment for each criminal violation.” Bustamante at 968, 2010 WL 1338125 at *7, 2010 U.S. Dist. LEXIS 32236 at 11-12, 21. The Bustamante court also rejected both Spears arguments that the term “serious offense” is ambiguous.
Regarding the Fifth Amendment interpretation, Spears ’ use of statutory construction seems misguided. For Constitutional purposes, the Supreme Court of the United States has never adopted the “same transaction” meaning and “to claim the word ‘offense’ is ambiguous based on a theoretically possible meaning ... is not a proper method of statutory construction.” Bustamante at 965, 2010 WL 1338125 at *4, 2010 U.S. Dist. LEXIS 32236 at 13-14.
Moreover, there are two main flaws in the Sixth Amendment analysis. First, any theoretical ambiguities presumed in this sole example of Sixth Amendment jurisprudence occurred after the passage of the ICRA in 1968. Statutory interpretation requires examining the term at the time the statute was passed, and not based upon subsequent developments in legal theory. Bustamante at 966, 2010 WL 1338125 at *5, 2010 U.S. Dist. LEXIS 32236 at 15 (citing BedRoc Ltd., 541 U.S. at 183, 124 S.Ct. 1587.) Second, the ambiguities arising from Codispoti and the Sixth Amendment are for the terms “serious offenses” and “petty offenses” only. Neither of these terms are used in the ICRA. According to Bustamante, “ambiguities arising from a judicially created term of art should not be relied upon to render ambiguous a statute not using that term of art.” Bustamante at 966, 2010 WL 1338125 at *5, 2010 U.S. Dist. LEXIS 32236 at 15. The present case concerns the term “any one offense,” not “petty offenses” or “serious offenses.” Theoretical ambiguities in the Fifth and Sixth Amendment do not provide a reasonable basis upon which to conclude that the term “any one offense” is an ambiguous term justifying relegation to the scrap heap in favor of a new interpretation which limits the exercise of Tribal judicial power.[2]
*34 The Spears court also suggests that Congress did not intend to allow tribal courts to impose lengthy prison sentences for fear that these long periods of incarceration would occur despite the fact that defendants did were not represented by counsel. Spears at 1181. The Spears Court uses the example that an individual stealing “a rare coin worth $101 ... faces up to 6 months in jail.” Id. at 1179. Continuing the hypothetical, the Spears Court reasoned, if the term “any one offense” of the ICRA did not prohibit consecutive sentences exceeding one year in length, then an individual who stole a whole collection of coins, each of which are each worth $101, would face one count of theft, or possession for each coin stolen and be facing a maximum term of imprisonment of multiple 6-month jail sentences which could be served consecutively without ever having a right to counsel. Id.
The basis of this argument is flawed. First, the provision in question of the ICRA, even if ambiguous, does not prevent Tribal courts from imposing consecutive sentences which cumulatively exceed one-year of incarceration. Under Spears ’ analysis, the ICRA would only prevent Tribal courts from imposing sentences exceeding one year in length if the crimes were factually intertwined. However, it is still possible that the Tribal court could impose a lengthy sentence for a single defendant at the conclusion of a single trial.
Using a similar example to that in Spears, if an individual stole the same 10-coin collection, albeit this time a single coin was stolen every day for 10 days, there would be 10 separate counts of theft. Although these counts do not arise in a single criminal transaction, it is likely that each of these 10 counts would be joined for trial. See, e.g. Cherokee R.Crim. P. 7(d)(1)(A). If the defendant is convicted of all 10 counts, a Tribal judge would be free to impose a 12 month sentence for each count, resulting in a 10 year sentence without the defendant ever having a right to counsel.[3] Had Congress intended to prevent Indian tribes from imposing a cumulative set of sentences exceeding one year in prison, there would be language expressly prohibiting the practice.
Also, even though the Spears court was “convinced” that Congress did not intend to allow Tribal courts to have the authority to impose lengthy prison terms upon defendants that do not have the right to publicly funded counsel, this alone does not prevent a Tribal court from imposing a sentence that exceeds one year. Spears at 1181.
In Romero v. Goodrich, 1:09-cv-232 RB/ DJS, (D.N.M. March 9, 2010)(slip OP.), a case arising from the Pueblo of Nambe Tribal Court, the defendant was unrepresented by counsel and was convicted in the Tribal Court after a bench trial by a Tribal Judge on 12 counts: 2 counts of battery (including one count against a household member); 4 counts of assault (including one count against a household member and another on a peace officer); 3 counts of false imprisonment; and 1 count each of *35 criminal damage to property, interference with communications, and criminal trespass. For each count the defendant was sentenced to 365 days incarceration. Four of these sentences ran concurrently with others resulting in total sentence of 8 years of incarceration.
A similar situation occurred in Miranda v. Nielson, 2009 U.S. Dist. Lexis 122933. In Miranda, the defendant, also without counsel, was found guilty in a bench trial, and subsequently sentenced to two one-year sentences for separate assault charges and sentenced to other shorter terms of incarceration for charges of endangerment and disorderly conduct. The total sentence to be served consecutively was 910 days.
At the trial level in Spears, the defendant was represented by counsel but plead guilty to four separate charges: negligent homicide; driving under the influence of alcohol, failing to take a blood, breath, or urine test, and failing to stop at the scene of a crime. The Chippewa Tribal Court imposed a one-year sentence for the negligent homicide and 6 months apiece for the DUI, sobriety test, and failure to stop offenses.
The fact that the Defendant in Spears was represented by counsel is some indication that the concern of both the District Court in Miranda and the Magistrate Judge in Romero over the right to counsel in Tribal Courts is likely a mere shibboleth. The Court does not cast the concerns of these Courts aside cavalierly. Indeed, in his book, Broken Landscape, Professor Pommersheim underscores the fact that the failure of Congress to include a right to counsel in the ICRA creates a structural weakness in the Tribal Court systems of this country that impedes perceptions of their legitimacy and can, in the absence of Congressional action, only be cured, as has been done in this jurisdiction, by a Tribal guarantee of the right to counsel or by a Constitutional amendment.
But the right to counsel is only a part of the story. The larger concern, reflected not only in Miranda and Spears but also in such cases as Oliphant v. Suquamish Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001), Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), and most recently Plains Commerce Bank v. Long Family Land and Cattle Co., 554 U.S. 316, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008) is a distrust of Tribal Courts themselves, a distrust of the very existence of extra-Constitutional Court systems within the United States only partially controlled by Congress and, by extension, a distrust of the very sovereignty of the Indian Nations themselves. However, to base a Federal Court judgment on the premise that Tribal courts are somehow defective or jurisprudentially inferior is a gross misunderstanding of the system of Tribal courts. For a Defendant to suggest the same is likewise unavailing.
A Cherokee Tribal Court exercised criminal jurisdiction in this territory as early as 1823. Martin, “The Nature and Extent of the Exercise of Criminal Jurisdiction by the Cherokee Supreme Court: 1823-1835,” 32 N.C Cen. Law Rev. 27 (2009). The right to counsel and to a jury trial in this jurisdiction likewise dates to the early 1820’s. Id. This Court is staffed with highly professional, Bar licensed Judges, who have attended some of the finest law schools in the country and who have a wide variety of professional and academic achievements and a wealth of jurisprudential experience. By adopting the argument of those who would restrict Tribal courts the Defendant, in essence, *36 seeks to call into question the very legitimacy of this Court. Adopting an argument, which has, at its bedrock, a concern as to the legitimacy of the Court is no guarantor of success.
Congress has plenary authority in the affairs of Indians and Indian Tribes. Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903). In the exercise of that authority, Congress enacted the ICRA. Subject to the ICRA and C.C. § 15-7, this Court has the authority to impose a maximum sentence of imprisonment of 12 months for each distinct criminal violation committed by a defendant in this jurisdiction.[4] These sentences may run consecutively with one another.[5]
The Defendant received a jury trial before a Bar licensed Judge and with the assistance of a Bar licensed attorney, appointed by the Court. The trial was fair and no suggestion of error was made by the Defendant.
At the end of the day, this Court is not about the business of undertaking a sea change in Supreme Court jurisprudence or even of studying whether this Court is perceived as legitimate. It can only pass on the cases before it. And in this case, the Judgments, and the Jury’s verdict which preceded them, were fair and the products of due process and equal protection.
Jon Nathaniel Crowe has engaged in a pattern of coercive control domestic violence on the person of Vickie Parker over a period of years. The lethality factors in this situation are extremely high. In light of his danger to the community in general and specifically to Ms. Parker, a substantial sentence of incarceration was called for. The consecutive sentences imposed by the Court addressed the Defendant’s status as a recidivist, coercive control batterer, took into consideration all of the circumstances of the crimes for which he was convicted by the jury and were reasonable and necessary under the circumstances. In light of the extent to which sentencing in this case was constrained by the ICRA, the interests of justice have been served. Had the Defendant been sentenced for these crimes under the Advisory Guidelines in Federal Court, no doubt a greater sentence of imprisonment would have been imposed.
Based upon the foregoing Findings of Fact, the Court makes the following:
CONCLUSIONS OF LAW
1. The Court has jurisdiction over the parties and the subject matter of this Motion.
2. The imposition of consecutive sentences in this case did not violate the ICRA.
ACCORDINGLY, IT IS HEREBY ORDERED that the Defendant’s Motion to vacate his consecutive sentences is DENIED.
KIRK G. SAUNOOKE Cherokee Court Judge
J. MATTHEW MARTIN Cherokee Court Judge

. "The original limitations were six months and $500, but Congress increased those in 1986. Publ. L. No. 99-570, § 4217, 100 Stat. 5207 (1986).” Cohen's Handbook of Federal Indian Law, 5th (Nell Jessup Newton) Ed, (2005), 769, n. 276.

. Note that neither the Defendant nor his authorities suggest that the ICRA constrains the Court's jurisdiction—only some of its power and authority. Thus, even under the Defendant’s most restrictive position, the Court would still retain the power to try and convict the Defendant for his crimes of domestic violence. Only the exercise of the Court’s sentencing authority is impacted in *34 the Defendant’s interpretation. See Cohen, at 756-757, n. 180-181.

. This argument is moot in this jurisdiction as the Defendant has exercised a right to counsel to Court appointed counsel: Cher. R.Crim. P. 26(A) provides as follows:
Right to Appointed Counsel A defendant who faces incarceration has the right to counsel at all critical stages of the criminal process. A defendant may make a knowing, voluntary and intelligent waiver of the right to counsel. Unless waived, a defendant who faces incarceration who has insufficient means to hire counsel is entitled to have counsel appointed by the Court for all critical stages of the criminal process.

. Some crimes carry a maximum sentence provided for by law of less than 12 months, of course.

. The Court notes that, when issued, every Judgment in this jurisdiction relates to a single discrete crime, unless the Judgments in more than one case are ordered consolidated by the Court.